Chamberlain *v.* Manning.

AMOS CHAMBERLAIN, appellant,

*v.*

RICHARD H. MANNING et al., respondents.

A bill for specific performance of a contract to convey lands cannot be sustained where the alleged vendor's agent, who made the contract, had only parol authority to procure buyers, and the only acts by way of part performance insisted on by complainant were entering on the premises and digging a trench for the foundation of a house, and perhaps depositing some of the lumber for it there.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions :

This bill is filed to enforce an alleged contract for the sale of lands. The defendant Manning had authorized one Tintle to solicit purchasers for lots of land in a tract of one hundred acres or more. Tintle had procured persons to purchase. His authority was by parol. He never signed for Manning. He accepted offers and promised conveyances, but in all cases the negotiations rested until Manning made, executed and delivered a deed. It seems that a few sales of lots were effected in this manner. I mention the fact because the complainant pressed it on my attention. But I cannot see that it aids him in the least, for it does not appear that Manning was bound in any case, or could have been in the law, until the delivery of the deed. The complainant says :

" I contracted with James Tintle, on the 28th of February, 1878, for a lot of land."

He also says he made a bargain on the 4th of March. He says :

"I went down on the 5th, the next day; he showed me where he had run off the land—showed me the corner, exactly where I stuck my .cane in; the contract was on the 28th of February; he showed me where he had run it

out; I say to him, 'It is just where we bargained for it;' he said, 'Yes;' I said, 'All right—I find no fault; now I am ready to pay for it at any time; I want to go right to work at it;' 'Well,' he said, 'here is your corner, borders and lines; I now deliver it over to you and give you possession—go on as soon as you have a mind; we will make you a deed in a few days or a few weeks;' he says, 'I pointed out to him where I wanted the lands to be, asked him his price, and he told me, and I said I would give it; his price was $150; Tintle said he would get Roome to run the lines;' he says, 'Tintle showed me the lines which he had run, gave me the lines and borders where they struck.'"

He says that he took possession of the lot on that day, March 5th, 1878, and went to work on it. He says Tintle gave him possession. The complainant says that after this, 25th of March, he saw Manning in New York, and that he told Manning that he had purchased the lot, and that Manning said it was all right, and that he told Manning he was about to build on it. The complainant says he again saw Manning, in the latter part of May, and said to him :

"I had bought that property, and I began to feel as if I wanted a deed for it now; and he said, 'All right;' he said he expected to be up a few days before, and didn't come; he said the reason why he didn't come was, he was about negotiating with another party—he didn't tell me who the other was—for the sale of the rest of the land; I said, 'Has that got anything to do with me?' he said, 'No, what is done already is all right;' he said it had nothing to do with me.

" Q. How far had you progressed with your building at that time?

" A. I forget just whether I had it raised then or not; I had the timber all got out ready; I don't know whether I had it raised or not; I can't recollect exactly, but I had been working at it and getting out all the time; he saw Manning again the latter part of July; then Manning told him that he had sold the land to Howell & Noble, the other two defendants; he says Manning told him that Howell & Noble would make a deed to him; he paid $10 to Tintle on account, May 10th, 1878; he spoke of the deed, and said to Tintle, 'You are so slow about the deed;' 'No question about it whatever—oh, no, not the slightest,' he said; then I said, 'I will make you a payment.'"

This was before he had seen Manning and had been told by him that he was about to sell to others. As to improving the lot at this time, in May, he says :

" I built a foundation and got timber out for all the building.

" Q. Where was the timber?

Chamberlain v. Manning.

"*A*. It was got out principally at Newfoundland, and carried down there; the foundation was laid, the stone was brought up there and the foundation was laid; the ditch was dug; there was no cellar under it; the ditch, where we laid the wall, was dug.

"*Q*. Where was the timber at that time?

"*A*. It was some on the ground, and some between there and Newfoundland; carted at my convenience, whenever I could.

"*Q*. Have you erected a building upon the lands?

"*A*. Yes, sir; it is forty feet one way, and sixteen feet the other way; there are eight rooms, counting the hall-room below.

"*Q*. How near was the building completed on the 12th of June of that year?

"*A*. I can't just recollect; I had all the timber; I don't recollect exactly the time; I got it out at that time; I must have had it raised, and partly enclosed; I know I had a spree there on 4th of July."

The complainant then tendered the money to Manning in June, 1879, and demanded a deed; Manning refused to accept the money and to make a deed; Howell & Noble had purchased the entire tract of the defendant Manning; the complainant then made a tender to them, and demanded the deed; they also refused.

If the complainant's statement is considered, it will but seem that he undertook to purchase of an agent who had no authority to execute any writing; it will also be seen that no writing was executed; it will likewise be seen that this agent delivered possession of some part of the larger tract to complainant, and that the complainant, at some time thereafter, and before the sale to Howell & Noble, made some excavations for a structure of some kind on the premises; he is only certain in his own mind that the ditch was dug; it is not certain that the timber was on the ground.

This is the complainant's best showing. I think it does not make a complete case. He has no standing except on the doctrine of part performance. He claims that he entered into possession under the contract. I do not understand that simply going upon a vacant parcel of ground is enough to satisfy the demands of the adjudged cases which prevail against the statute to prevent fraud.

But the complainant insists that he made valuable improve-

ments in good faith, relying upon his contract, supposing the agent had power to deliver possession. I cannot conclude that the alleged improvements were made before the sale to Howell & Noble, nor before Chamberlain had notice of such sale. As intimated above, I cannot determine that he had made any substantial improvements. Judging from his own statements, there were only a trench dug and some timbers on the ground and some at Newfoundland.

But still, from the complainant's side, the material inquiry is, Was the building erected at the time of the sale to Howell & Noble? Notwithstanding what I have said above respecting the complainant's own statement, yet both he and his witnesses assert that the building was up and partially enclosed. This is emphatically denied by the defendants and their witnesses. The contradiction is full and complete. I have-given great consideration to the numerous conflicting statements, in the hope of some reasonable reconciliation, but in vain. In such case, it is not enough to say. that the complainant's witnesses affirm positively that there was a house, while the defendants' witnesses only speak negatively. I can see no more reason for the latter to be mistaken than the former; they had equal opportunities for seeing. To insist that a negation cannot be established as against an affirmation in many like cases, is a mere mockery of our most common experience. But let us look at this claim of possession further. Was it under the contract? How did he obtain it? Chamberlain says that Tintle told him to take possession, and Tintle says he authorized Chamberlain to enter. Tintle being a mere agent to solicit purchasers, with no authority to execute a writing or to make a conveyance, was the possession here claimed such as can be pleaded in bar of the act? As intimated, I can find no satisfactory evidence which authorized Tintle to bind Manning. It seems quite plain that Manning always had the right of rejection, and especially in cases where he had not previously fixed the price. Manning says so, and there is no evidence sufficiently explicit to the contrary. Hence, I am bound to say that Chamberlain was not in possession under any contract. His possession was that of a stranger, and conse-

Chamberlain v. Manning.

quently unlawful. Such a possession never ought to be tolerated to bar a solemn act of legislation, which legislation was enacted to prevent the mischiefs which seem to throng this case from its commencement to its conclusion. In all the exemplifications of the wisdom of this celebrated act, I think no more conspicuous illustration can be found than the one before me.

I have looked at this case from another standpoint. Supposing the relation of the parties reversed, the defendant Manning being complainant. Could he, at any time prior to his sale to Howell & Noble, have prevailed in a suit for specific performance? I think not. Chamberlain was not bound. He paid $10 to Tintle, but that did not bind him, all the cases so adjudge. He had taken possession of the naked soil, under the agent, and perhaps dug a trench. I cannot believe that any considerate judge would regard that a valuable substantial improvement which so changed the nature of things as to bind Chamberlain to a specific performance. If it be said that the person who makes the improvements is the only one who can claim the benefit of them, then I say as to this case, there is want of mutuality, without which the law abhors specific performance.

I conclude that there was no contract within the statute, and also that there was no such part performance by the delivery of possession and making valuable improvements as would enable the defendants to avail themselves of their own wrong, unless the court should interpose.

I will advise a decree dismissing the complainant's bill, with costs.

*Mr. Z. M. Ward,* for the appellant.

*Mr. H. C. Pitney,* for the respondents.

PER CURIAM.

This decree affirmed for the reasons given by the vice-chancellor.

For affirmance—THE CHIEF-JUSTICE, DEPUE, KNAPP, REED, VAN SYCKEL, COLE, MCGREGOR, PATERSON—8.

For reversal—DIXON, BROWN, CLEMENT, WHITAKER—4.